

09/03/2010

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TRED Holdings, L.P., | § | Case No. 10-40749 |
| | § | (Chapter 7) |
| Alleged Debtor. | § | |

## MEMORANDUM OPINION

This is an involuntary petition prosecuted by an attorney, Douglas J. Brooks, who purported to act on behalf of three creditors of TRED Holdings, L.P.  Mr. Brooks filed the involuntary petition against TRED so that two of the petitioning creditors, Tonya Hampton and Branden Maner, L.L.C., would gain an advantage against TRED in certain state court litigation.  TRED has requested actual and punitive damages against Mr. Brooks and two of the petitioning creditors, Tonya Hampton and Branden Maner, pursuant to 11 U.S.C. § 303(i).  TRED dropped its request for damages against the third petitioning creditor, Anna J. Molina, based on her testimony at the damages hearing.  The following constitutes the Court's findings of fact and conclusions of law.

### I. BACKGROUND

#### A. The Litigation Prior to the Involuntary Petition

TRED is in the business of lending money to people who want to purchase homes.  Jeffrey R. Burrell, one of the owners of TRED, testified that TRED has not originated any new loans since January 2008.  TRED has serviced its existing portfolio of loans for the past several years as well as bought and sold its own properties.[1]

---

[1] In October 2009, Mr. Burrell entered into an agreed order with the Texas Department of Savings and Mortgage Lending whereby he agreed that he would not engage in any activity for which a mortgage license is required unless and until he is sponsored by a licensed mortgage broker.  Under this agreement, TRED may not finance mortgages but is permitted to buy and sell homes for itself.

The dispute that led to this involuntary bankruptcy case arises from a loan TRED made to Branden Maner in 2006. In particular, on or about September 22, 2006, Branden Maner executed and delivered to TRED a promissory note in the original principal amount of $435,000. To secure payment of the Note, Branden Maner executed and delivered to TRED a deed of trust for the real property generally described as 4865 County Road 2714, Caddo Mills, Texas. In addition, Malcolm Hampton Jr., who is the managing member of Branden Maner, Malcolm Hampton Sr., and Tonya Hampton guaranteed the note.

Branden Maner failed to perform its obligations under the note. As a result, TRED purchased the property at a foreclosure auction on November 6, 2007. Malcolm Hampton Jr. was living with his wife, Tonya, and his father on the Caddo Mills property at the time of the foreclosure sale. TRED thereafter made demand upon the Hampton family to vacate the property. They refused.

Neither Branden Maner nor the Hampton family made any payments to TRED after the foreclosure sale. On or about January 20, 2009, TRED brought a forcible detainer lawsuit against the Hampton family in a county court in Hunt County, Texas. Malcolm Hampton Sr. obtained a stay of that action by filing a bankruptcy petition in this Court on March 19, 2009. Malcolm Hampton Sr. maintained that since he and his family occupied the property, and he had sought bankruptcy protection in this Court, the county court could not proceed with the forcible detainer lawsuit until TRED obtained relief from the automatic stay.

While Malcolm Hampton Sr.'s bankruptcy case was pending, in or around January 2009, Malcolm Hampton Jr. and his wife filed a state district court lawsuit in

Hunt County, Texas. They alleged, among other things, a claim against TRED for wrongful foreclosure. The Hunt County district court dismissed their suit for want of prosecution on November 30, 2009.

On October 19, 2009, TRED filed a motion in Malcolm Hampton Sr.'s bankruptcy case for relief from the automatic stay with respect to the real property located at 4865 County Road 2714, Caddo Mills, Texas. TRED sought relief from the stay to the extent necessary to proceed with its forcible detainer action and, if it prevailed in that action, to evict Malcolm Hampton Sr. and his family from the Caddo Mills property. Malcolm Hampton Sr. opposed the motion, arguing that the foreclosure sale was wrongful. He asserted in his opposition to the motion that he was preparing an adversary complaint against TRED.

On December 2, 2009 – the day TRED's motion for relief was scheduled for a final hearing – Malcolm Hampton Sr. filed his adversary complaint against TRED. However, the parties appeared at the final hearing on TRED's motion for relief from the stay and announced that they had reached an agreement. On December 17, 2009, the Court entered an agreed order lifting the stay and allowing TRED's forcible detainer action to proceed in county court. On January 8, 2010, the Court entered an agreed order dismissing Mr. Hampton's adversary complaint with prejudice.

On January 28, 2010, TRED obtained a judgment for possession of the Caddo Mills property. Branden Maner and the Hampton family appealed the judgment and requested a stay pending appeal. On February 9, 2010, the state appellate court denied their motion for a stay pending appeal.

On February 10, 2010, Branden Maner filed a lawsuit in the 191st District Court of Dallas County, Texas, and obtained a temporary restraining order restraining TRED from serving the writ of possession. The district court scheduled a temporary injunction hearing for 9:00 a.m. on February 26, 2010. According to Mr. Brooks, on the eve of the scheduled hearing, he had a discussion with Malcolm Hampton Jr. and Gale Corbitt Hutchinson, who Mr. Brooks employed as a paralegal on a case-by-case basis, regarding whether to file an involuntary petition against TRED in order to obtain another stay of the execution of the writ of possession. At or around this time, Malcolm Hampton Jr. contacted Anna Molina and invited her to join in the bankruptcy case as a petitioning creditor. Anna Molina declined.

## B. The Involuntary Petition

Between 1:25 and 1:32 a.m. on February 26, 2010, Mr. Brooks' electronic login and password were used to file two involuntary petitions against TRED.[2] The petitions were filed in the United States Bankruptcy Court for the Eastern District of Texas, Lufkin Division. The Court closed one of the cases as a duplicate. The Court transferred the other case to the Sherman Division and assigned it Case No. 10-40749.

The involuntary petition lists three petitioning creditors: Branden Maner, Anna J. Molina, and Tonya Hampton. The involuntary petition states that each creditor's claim is based on fraud and breach of contract. The stated amount of Branden Maner's claim is $542,972.32, the stated amount of Tonya Hampton's claim is also $542,972.30, and the

---

[2] This Court issued an electronic login and password to Mr. Brooks more than a year ago. Mr. Brooks used that electronic login to file documents in connection with voluntary cases filed by Fat Joes Pizza Pasta Bar, Inc., Case No. 09-40726; Cancer Care Resource Management, Case No. 09-41996; and Gale C. Hutchinson Sr., Case No. 10-40080. In December 2009, Mr. Brooks also used his electronic login and password to file an involuntary petition against Frisco World Cup Main, L.L.C., Case No. 09-43570. The Court dismissed all of these cases for a variety of reasons.

4

stated amount of Anna Molina's claim is $329,754. Mr. Brooks knew that none of these individuals or entities held undisputed claims against TRED as required for them to sustain an involuntary petition pursuant to § 303(b) of the Bankruptcy Code.

Mr. Brooks orally announced the filing of the involuntary petition at the injunction hearing on the morning that the involuntary petition was filed. He also informed the state district court that Malcolm Hampton Jr., the managing member of Branden Maner, was filing a suggestion of bankruptcy relating to the involuntary petition. As a result, the state district court did not go forward with the injunction hearing. In addition, Mr. Brooks' office faxed a notice of the involuntary filing to TRED's primary lender, Texas Capital Bank, on the date of the involuntary bankruptcy filing.[3]

TRED promptly requested an emergency hearing in this Court on the involuntary petition. The Court granted the request over the objection of the petitioning creditors, which Mr. Brooks filed electronically on March 5, 2009. The Court scheduled the emergency hearing for March 11, 2010.

The Hunt County Constable served the writ for forcible entry and detainer on the Hamptons on March 8, 2010. The next day, on March 9, 2010, Branden Maner filed a Chapter 7 petition in the United States Bankruptcy Court for the Northern District of Texas, Case No. 10-41667. On the same day, Brandon Maner requested an emergency hearing, seeking enforcement of the automatic stay against TRED. The bankruptcy court denied Branden Maner's request in an order entered on March 11, 2010.[4]

---

[3] An individual or entity using the name Malcolm Hampton also posted comments regarding the involuntary petition at www.tredholdingsfraud.com (last visited May 12, 2010).

[4] After the bankruptcy court refused to issue an order staying the writ for forcible entry and detainer, Branden Maner failed to file bankruptcy schedules and other required documents. The bankruptcy court dismissed Branden Maner's case on April 17, 2010.

At the emergency hearing in this Court on March 11, 2010, Mr. Brooks announced that he was appearing for the petitioning creditors. None of the petitioning creditors attended the hearing. Mr. Brooks announced to the Court that Branden Maner's principal, Malcolm Hampton Jr., and Tonya Hampton were moving out of the Caddo Mills property that morning, and Anna Molina had a "personal emergency" that prevented her from attending the hearing. According to Mr. Brooks' testimony at a subsequent hearing, he made the representation regarding Anna Molina's scheduling conflict based on a representation made to him by Malcolm Hampton Jr. Mr. Brooks did not advise the Court that a paralegal had mistakenly filed the involuntary petition nor did Mr. Brooks advise the Court that his client's had not authorized the filing.

At the conclusion of the hearing on March 11, 2010, the Court granted TRED's motion to dismiss the involuntary petition based on the failure of the petitioning creditors to present evidence in support of the petition. The Court declined to address TRED's request for an award of damages in light of Mr. Brooks' complete lack of preparation for the hearing. The Court scheduled TRED's request for an award of costs, actual damages, punitive damages, and attorney's fees under § 303(i) of the Code for an evidentiary hearing on April 12, 2010. At that time, Mr. Brooks advised the Court that he is not a bankruptcy attorney and would be withdrawing from his representation of the petitioning creditors prior to the damages hearing.

### C. The Damages Hearing

Mr. Brooks did not withdraw from representing the petitioning creditors. At the damages hearing on April 12th, TRED appeared with several witnesses who had traveled from other cities to testify. Mr. Brooks once again appeared without any witnesses or

6

other evidence. Mr. Brooks requested a continuance of the hearing on behalf of his purported clients.

In support of his request for a continuance, Mr. Brooks represented that he had not been able to reach Anna Molina to notify of her of the damages hearing. He also represented that Malcolm and Tonya Hampton had just moved to California and lacked the funds to travel back to Texas for the hearing. According to the version of events Mr. Brooks provided to this Court on April 12th, Mr. Brooks needed Malcolm Hampton Jr. as a witness to testify that he (Mr. Brooks) had nothing to do with the filing of the involuntary petition against TRED. Mr. Brooks represented to the Court on April 12th that the involuntary petition had been filed by a rogue paralegal without his knowledge or authority. Mr. Brooks stated that he does not even know how to electronically file documents with this Court.

The Court denied Mr. Brooks' request for a continuance of the damages hearing. In light of the seriousness of the matter, however, the Court announced that she would take TRED's evidence regarding damages and carry the balance of the matter to another day in order to allow Mr. Brooks and the petitioning creditors another opportunity to present evidence on their own behalf. The Court scheduled the continued evidentiary hearing for April 30, 2010.

At the hearing on April 12, 2010, TRED sought to establish that it had suffered proximate damages as a result of the involuntary petition. Michael Stoner, the CEO for TRED, testified that he first found out about the involuntary petition from TRED's primary lender. Mr. Stoner testified that TRED's banks applied heightened standards when advancing funds to TRED in light of the involuntary petition. Mr. Stoner and Mr.

7

Burrell testified that TRED's banks refused to advance funds to TRED for the two weeks that the involuntary petition was pending in this Court. Nonetheless, they could not place a precise dollar amount on damages other than legal fees and their own out-of-pocket costs.

With respect to out-of pocket costs, Mr. Burrell testified that he had spent approximately $900 to fly from Houston, rent a car, and testify before this Court on two occasions. With respect to legal fees, TRED introduced evidence establishing that it had incurred the total amount $15,288.94 in attorneys' fees and costs from the date of the involuntary petition through April 12, 2010. This amount includes $9,900 in fees and $110.04 in costs for TRED's counsel in the state court actions, Curtis, Alexander, McCambell, & Morris, P.C. This amount also includes $3,700 in fees and $78.90 in costs for TRED's bankruptcy counsel, Michael K. Vrana, P.C., through March 24, 2010. The parties stipulated that TRED would incur an additional charge of $200 an hour for five hours for Mr. Vrana's appearance at the hearing on April 12, 2010.

### D. The Damages Hearing … Continued

Mr. Brooks appeared at the continued damages hearing on April 30, 2010. As the parties opened the hearing, Mr. Brooks disclosed, for the first time, that he had never met nor spoken with Ms. Molina prior to filing the involuntary petition. Mr. Brooks disclosed that he had first spoken with Ms. Molina on April 29, 2010 – and that he was not acting or authorized to act as her attorney at the hearing on April 30, 2010.

Ms. Molina appeared at the hearing on April 30, 2010, without counsel. Her testimony was highly credible. In light of her credible testimony, TRED withdrew its request for an award of damages against her.

Ms. Molina testified that she had never authorized Mr. Brooks to include her in an involuntary petition against TRED, never authorized Mr. Brooks to represent her in connection with any matter, and never spoken with Mr. Brooks until the day before the damages hearing. She testified that she did not know about the prior hearings on March 11, 2010 and April 12, 2010. She did not tell Mr. Brooks or anyone else that she had a family emergency on March 11, 2010, and, in fact, did not have a family emergency on that date.

Ms. Molina testified that Malcolm Hampton Jr. had called her months ago. He told her he needed three people to file some sort of suit against TRED. He was aware that TRED had foreclosed on a home she had purchased and thought she might want to join the suit. She told Malcolm Hampton Jr. that she was not interested. Although the involuntary petition states that she has claims against TRED for fraud and breach of contract, she testified that she does not have any claims against TRED. Ms. Molina admitted receiving some documents from TRED's counsel relating to this proceeding. She testified, credibly, that she did not understand the documents or pay any particular attention to them as they did not appear to involve her.

Ms. Molina testified, credibly, that she had only recently learned that her name had been used to file an involuntary petition against TRED in this Court. She contacted Malcolm Hampton Jr. on April 29, 2010, who told her that she did not need to attend the hearing on April 30, 2010. He told her that Mr. Brooks' paralegal, Gale Corbett Hutchinson, had filed the involuntary petition without Mr. Brooks' authority. Malcolm Hampton Jr. gave her Mr. Brooks' telephone number. She did not call the number. Later that day, however, Malcolm Hampton Jr. and Mr. Brooks initiated a three-way call with

her.  Mr. Brooks repeated the story of the rogue paralegal and discouraged her from attending the hearing on April 30, 2010.

Mr. Brooks also testified at the hearing on April 30, 2010.  The primary purpose of his testimony was to throw his client and occasional employee, Mr. Hutchinson, under the proverbial bus.  Mr. Hutchinson was not present at the hearing.  Mr. Brooks testified that he has known Mr. Hutchinson for approximately 10 years.  Mr. Brooks represented Mr. Hutchinson in a bankruptcy case filed in this Court on August 16, 2004 (Case No. 04-43766) and another case filed on January 5, 2010 (Case No. 10-40080).  At the time the involuntary petition was filed against TRED, Mr. Brooks was representing Mr. Hutchinson in connection with the later bankruptcy case as well as criminal charges brought by the State of Texas against Mr. Hutchinson.  Mr. Hutchinson's bankruptcy case was automatically dismissed on February 20, 2010, by operation of § 521(i) of the Code based on his failure to file the documents required by § 521(a)(1).  With respect to the criminal proceedings, Mr. Brooks filed a motion to withdraw as counsel for Mr. Hutchinson on April 15, 2010 – shortly after he first regaled this Court with the story that Mr. Hutchinson was a rogue paralegal who had filed the involuntary petition against TRED without his knowledge.[5]

Mr. Brooks' representations that he did not authorize or participate in the filing of the involuntary petition against TRED were false.  Mr. Brooks, in fact, authorized the filing.  He used the existence of the involuntary petition to obtain a stay of the injunction hearing in state district court on the day he filed the involuntary petition.  He then

---

[5] According to Mr. Brooks, Malcolm Hampton Jr. was Mr. Hutchinson's "client."  Mr. Brooks suggested that Mr. Hutchinson had been holding himself out as a lawyer.  However, if these unsupported statements are true, it appears that Mr. Brooks aided and abetted Mr. Hutchinson's role-playing.  There is no dispute that, whatever the "clients" may have understood, Mr. Hutchinson was working under the supervision of Mr. Brooks on a case-by-case basis.

10

appeared before this Court and opposed dismissal of the involuntary petition at the emergency hearing on March 11, 2010.

From the day the involuntary petition was filed on February 26, 2010, until the first day of the damages hearing on April 12, 2010, Mr. Brooks never mentioned that a paralegal filed the case without proper authorization, nor did he take any steps to withdraw or dismiss the petition prior to the Court's dismissal order. Malcolm Hampton Jr. knew that the petition had been filed before dawn on February 26, 2010 – he filed a suggestion of bankruptcy with the state court later that morning. Mr. Brooks fabricated a story that Mr. Hutchinson was acting without authority in order to deflect blame from himself, Tonya Hampton, and Malcolm Hampton Jr. In short, Mr. Brooks lied.

Mr. Brooks also attempted to distance himself from any responsibility for this involuntary petition by testifying that he does not have a computer or know how to electronically file documents. This testimony was not credible. Moreover, he has a history of allowing others to file documents for him. He admitted that he authorized the electronic filing of a bankruptcy petition by Branden Maner. According to Mr. Brooks, Malcolm Hampton Jr. obtained an electronic username and password for Mr. Brooks from the bankruptcy clerk's office for the United States Bankruptcy Court for the Northern District of Texas. Malcolm Hampton Jr. then used his own computer to electronically file Branden Maner's bankruptcy petition. Mr. Brooks obviously could have used the same or a similar procedure to cause the filing of an involuntary petition

against TRED.[6] The Court's own records show that he has filed other bankruptcy cases in this district.

Michael Stoner testified for TRED on April 30, 2010, in an attempt to shore up TRED's claim for proximate damages caused by the involuntary petition. Mr. Stoner testified that his lenders refused to advance approximately $73,000 to TRED during the two weeks between the filing and dismissal of the involuntary petition. TRED used funds from its cash reserves during this period of time. TRED used these funds to pay its operational expenses, including payments to contractors for the rehabilitation of TRED's properties, among other things. Mr. Stoner testified, credibly, that the filing of the involuntary petition had been inconvenient and frustrating for TRED.

## II. DISCUSSION

As a general rule, the attorneys who practice before this Court possess a high degree of professionalism and skill. It is a privilege to preside over matters in this district. The Court is rarely called upon to correct the behavior of the attorneys who appear in the courtroom. This is one of those rare and unfortunate cases.

### A. TRED's Request for an Award of Damages Against Petitioning Creditors

Section 303(i)(1) provides that, if a bankruptcy court dismisses an involuntary petition over the objection of the petitioning creditors, the court may grant judgment against the petitioners for costs or reasonable attorneys' fees. If the petitioners filed the petition in bad faith, § 303(i)(2) provides that the court may grant judgment for any actual damages proximately caused by such filing or punitive damages. Section 303(i) expressly permits a court to award punitive damages under § 303(i)(2) even in the

---

[6] The only "evidence" in support of Mr. Brooks version of events was an unsigned letter purportedly written by Malcolm Hampton Jr. as the managing member of Branden Maner The letter was rank, self-serving hearsay.

12

absence of actual damages. *See In re Oakley Custom Homes,* 168 B.R. 232 (Bankr. D. Colo. 1994) ("an award of punitive damages may enter whether or not there is proof of actual damages"); *In re Advance Press & Litho, Inc.,* 46 B.R. 700 (Bankr. D. Colo. 1984) ("[T]he Bankruptcy Code specifically authorizes, in § 303(i)(2), punitive damages even in the absence of or in addition to actual damages"); *In re Atlas Mach. & Iron Works,* 190 B.R. 796, 804 (Bankr. E.D. Va.1995) ("[S]ection 303(i)(2)(B) does not require proof of actual damages as a prerequisite to an award of punitive damages.").

If an involuntary bankruptcy petition is dismissed, there is a rebuttable presumption the alleged debtor is entitled to reasonable fees and costs. 11 U.S.C. § 303(i). The burden is on the petitioning creditors to rebut the presumption by establishing that fees and costs were unwarranted under the totality of circumstances. *Id. See also Sofris v. Maple-Whitworth, Inc., et al. (In re Maple-Whitworth, Inc.)*, 556 F.3d 742, 746 (9th Cir. 2009). However, with respect to proximate and punitive damages, courts addressing the issue agree that "[t]here is a presumption of good faith in favor of the petitioning creditor, and thus the alleged debtor has the burden of proving bad faith." *In re John Richard Homes Building Co.*, 291 B.R. 727, 729-30 (Bankr. E.D. Mich. 2003) (internal quotations omitted), aff'd, 439 F.3d 248 (6th Cir. 2006). Determining whether an involuntary bankruptcy petition was filed in bad faith requires the bankruptcy court to look at the "totality of circumstances." *Id.; see also Higgins v. Vortex Fishing Systems, Inc.,* 379 F.3d 701, 706 (9th Cir. 2004) (collecting cases).[7]

---

[7] The term "bad faith" is not defined in § 303. Courts have used four different approaches for determining whether an involuntary petition was filed in bad faith for purposes of § 303(i)(2): (a) an "improper use test,"(b) an "improper purpose test," (c) an "objective test," which inquires into what a reasonable person would have believed, and (d) a "Rule 9011 test," which inquires into whether the petition: (i) was justified based upon a reasonable inquiry into the facts and the law; and (ii) was interposed for an improper purpose. *Lubow Machine Co., Inc. et al, v. Bayshore Wire Products Corp.,* 209 F.3d 100, 105-06 (2nd Cir .2000).

13

Here, Branden Maner and Tonya Hampton objected to the dismissal of the involuntary petition against TRED. The Court dismissed the involuntary petition over their objection. At the hearings on April 12th and 30th, they did not offer any evidence rebutting the presumption that TRED is entitled to fees and expenses. The Court finds that TRED's fees and expenses were necessary, reasonable, and warranted under the totality of the circumstances. The Court, therefore, concludes that TRED may recover from Tonya Hampton and Branden Maner, jointly and severally, its attorneys' fees and costs from the date of the involuntary petition through the conclusion of the hearings on TRED's request for damages. *See In re Landmark Distribs., Inc.,* 195 B.R. 837, 846 (Bankr. D. N.J. 1996). The total amount of TRED's fees and costs for this period is $18,188.94, which includes out-of-pocket costs of $900, attorneys' fees and costs of $16,288.94 through the conclusion of the hearing on April 12th, plus an additional $1,000 for attorneys' fees incurred in preparing for and attending the hearing on April 30th.

With respect to whether Branden Maner and Tonya Hampton acted in bad faith, the Court concludes that the totality of the circumstances establishes that they did. Their claims against TRED were the subject of litigation at the time they joined the involuntary petition. The involuntary petition had no merit and was filed without the knowledge of the third petitioning creditor, who had refused an invitation from Branden Maner's managing member to join in the involuntary petition. Tonya Hampton and Branden Maner did not conduct a reasonable investigation of the facts or the law prior to filing an involuntary petition against TRED. The motivation of Tonya Hampton and Branden Maner was to harm TRED and to forestall the imminent eviction of the Hampton family from the Caddo Mills property.

TRED asserts that the bad faith filing of the involuntary petitions resulted in proximate damages of $73,000. TRED's banks froze TRED's credit after learning of the bankruptcy petition, and TRED asserts that it was unable to borrow all of the funds it requested from the banks for approximately two weeks. TRED used its cash reserves to cover the $73,000 shortfall in operational funds for this period of time. TRED failed to show, however, that it was damaged by the change in the source of its operational funding. TRED also failed to present evidence of any specific business opportunities it missed as a result of the involuntary petition. The Court, therefore, concludes that TRED failed to establish actual damages other than its costs and attorneys' fees.

In addition to an award of costs and attorneys' fees, TRED requests that the Court award punitive damages against Tonya Hampton and Branden Maner, jointly and severally, for their bad faith filing of the involuntary petition against TRED. It is a well-established principle that punitive damages must bear a "reasonable relationship" to compensatory damages. *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 597 (1996). In determining the appropriate amount of punitive damages, courts also consider the degree of reprehensibility of the conduct at issue. *See Rubinstein v. Administrators of the Tulane Educ. Fund,* 218 F.3d 392, 408 (5th Cir. 2000).

In this case, Tonya Hampton and Branden Maner filed an involuntary petition against TRED for the purpose of harming TRED and gaining an advantage in pending state court litigation. They, and their attorney, were well aware that they were not qualified to act as petitioning creditors under the Bankruptcy Code. They were also aware that they needed three creditors to file an involuntary petition and did not have the requisite number. Their use of an involuntary petition to harass TRED and extract a

15

litigation advantage is precisely the sort of bad faith conduct that can and should be sanctioned under § 303(i). As applied to the facts of this case, the Court finds that the amount of punitive damages that is appropriate, not unduly oppressive in the light of the conduct of Tonya Hampton and Branden Maner, and consistent with the severity of their improper actions, is $25,000.00, jointly and severally.

### B. TRED's Request for Sanctions Against Mr. Brooks

Finally, TRED requests an award of actual and punitive damages against Mr. Brooks. TRED cites § 303(i) in support of this request. However, § 303(i) of the Code provides for sanctions against petitioning creditors – not their counsel.

The imposition of sanctions against an attorney is often guided by Bankruptcy Rule 9011. *See, e.g., In re Oakley Custom Homes, Inc.,* 168 B.R. at 241 (imposing sanctions against counsel who filed and prosecuted a bad faith involuntary petition). Although TRED has not requested sanctions against Mr. Brooks based on violations of Bankruptcy Rule 9011(b), this Court may issue an order *sua sponte* for Mr. Brooks to appear and show cause why he has not violated Bankruptcy Rule 9011(b). *See* FED. R. BANKR. P. 9011(c)(1)(B).

The Court also has authority to impose sanctions against Mr. Brooks under 28 U.S.C. § 1927, which states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Fifth Circuit has interpreted the requirement that an attorney's conduct must be vexatious and unreasonable as requiring evidence of bad faith, improper motive, or

16

reckless disregard of the duty owed to the court. *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998). An imposition of sanctions *sua sponte* by the court requires "due process" and reasonable opportunity for the attorney to defend against the imposition of sanctions. *U.S. v. Woodberry*, 672 F.Supp.2d 761, 768 (S.D. Miss., 2009).

In addition to the Court's authority under Bankruptcy Rule 9011 and 28 U.S.C. § 1927, the Supreme Court has stated that "an assessment of attorney's fees is undoubtedly within a court's inherent power." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45 (1991). "[A] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (internal quotations omitted). Moreover, statutes and rules that provide for sanctions do not displace this inherent power. *Id.* at 46. However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44.

In this case, Mr. Brooks admits that he discussed the possibility of filing an involuntary petition against TRED on the eve of the injunction hearing in the state district court lawsuit initiated by Branden Maner against TRED. He now claims that he did not actually authorize the filing. He blames his client and sometime-paralegal, Mr. Hutchinson, for filing the involuntary petition against his express directives. Mr. Brooks appears to recognize that blaming his client creates a conflict of interest, *see* TEX. R. DISCL. P. 1.06(b)(2), and he indicated at the hearing on April 30, 2010, that he was seeking to withdraw as counsel for Mr. Hutchinson in the pending criminal proceedings.

Mr. Brooks' testimony that he did not authorize the filing of the involuntary petition against TRED was false. Mr. Brooks used the filing of the involuntary petition to obtain a stay of the injunction hearing. Mr. Brooks was aware that the claims of

17

Branden Maner and Tonya Hampton were the subject of a bona fide dispute – he was representing them in connection with that dispute. Mr. Brooks did not make any inquiry into Ms. Molina's alleged claims against TRED but, instead, relied entirely upon the representations made to him by Malcolm Hampton Jr. Nonetheless, at an emergency hearing in this Court on TRED's motion to dismiss the involuntary petition, Mr. Brooks prosecuted the petition and sought the entry of an order for relief. Mr. Brooks came up with the story of a rogue paralegal when it became clear that this Court might sanction him, personally, for his conduct.

If Mr. Brooks did not authorize the filling of the petition, as he now claims, then he acted maliciously and in bad faith by failing to mention the possible error to the state court in the detainer suit. He acted maliciously and in bad faith by taking no steps to correct the unauthorized filing but, instead, prosecuting the involuntary petition in this Court.[8] If this Court were to believe Mr. Brooks self-serving testimony at the sanctions hearings, then the best that could be said about his conduct is that he joined in a fraud upon the state district court and perpetrated a fraud on this Court. He deliberately acted to deceive this Court by, among other things, appearing to prosecute the involuntary petition when he knew it should never had been filed. He deliberately deceived this Court by representing that he was appearing for Ms. Molina when, in fact, he had not been retained by Ms. Molina and had never even spoken with her.

---

[8] As Mr. Brooks is surely aware, this Court's local rules state that the user log-in and password required for submitting documents to the electronic filing system serve as the user's signature for purposes of "Fed. R. Bankr. P. 9011 or any other signature requirement imposed by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or any local rule of [this Court]." LBR 5005; TXEB Appendix 5005 at III(B)(2). Further, "[n]o person shall knowingly utilize or cause another person to utilize the password of an Electronic Filer unless such a person is an authorized agent of the Electronic Filer." *Id.*

## CONCLUSION

The Court is convinced that Tonya Hampton and Branden Maner acted in bad faith. The Court will enter a separate Judgment against Tonya Hampton and Branden Maner consistent with this Memorandum Opinion. With respect to the request for sanctions against Mr. Brooks, the Court will provide Mr. Brooks with an opportunity to show cause why he has not violated Bankruptcy Rule 9011(b) and why grounds do not exist to sanction him under Bankruptcy Rule 9011(c), 28 U.S.C. § 1927, and/or this Court's inherent powers.

Signed on 9/3/2010

*Brenda T. Rhoades*   SR
HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE